UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ARIANNA BLANCHE, a minor, by LATOYA BLANCHE, guardian of ARIANNA BLANCHE, | ) ) ) |
| Plaintiff, | ) No. 12 C 7332 ) ) |
| v. | ) Judge Thomas M. Durkin ) |
| UNITED STATES OF AMERICA AND SILVER CROSS HOSPITAL AND MEDICAL CENTERS, | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Arianna Blanche, by her guardian and mother, Latoya Blanche,[1] has sued defendant Silver Cross Hospital and Medical Centers ("Silver Cross") for injuries that she sustained during her delivery. Silver Cross has moved for summary judgment, arguing that it is not vicariously liable for the actions of the delivering doctor, an independent contractor. Blanche argues that there is a genuine dispute of fact regarding whether Silver Cross is liable for the doctor's actions under the apparent-agency doctrine. For the following reasons, the Court grants Silver Cross's motion.

## BACKGROUND

While pregnant with Arianna, Latoya received prenatal care at the Will County Community Health Center ("WCCHC"), a federally-funded clinic. R. 72-1 ¶ 4. On February 11, 2008, Latoya signed a WCCHC consent form acknowledging

---

[1] The Court will refer to the plaintiff as "Blanche" except when context requires the Court to distinguish Arianna from her mother.

that clinic physicians perform deliveries exclusively at Silver Cross. *Id.* at ¶ 15; *see also* R. 64-5 at 63. She does not recall signing the form, but recalls that WCCHC employees told her that she would give birth at Silver Cross. R. 72-1 ¶ 15. On March 15, 2008, Latoya was admitted to Silver Cross for reasons that do not appear in the record. *Id.* at ¶ 24. In connection with this admission, she signed a one-page "Consent Form" divided into five sections: "CONSENT," "HOSPITAL SERVICES," "PATIENT SELF-DETERMINATION," "ASSIGNMENT OF INSURANCE BENEFITS," "FINANCIAL AGREEMENT." *Id.* (capitalization in original). Under the heading "CONSENT," the form stated:

> I consent to xray [sic] examinations, laboratory procedures, medical treatment, emergency treatment, or other hospital services including nursing care rendered me under general and special instructions of the attending, consulting, or emergency department physicians. I am under control of the attending physicians, their assistants or designated on-call or covering physicians, who are in charge of my care and treatment. The Hospital is not responsible for acts of care and treatment ordered by the physician, which are properly performed pursuant to his instructions. I UNDERSTAND THAT ALL DOCTORS FURNISHING SERVICES TO ME, INCLUDING EMERGENCY DEPARTMENT, RADIOLOGISTS, ANESTHESIOLOGISTS, PATHOLOGISTS, AND THE LIKE, ARE INDEPENDENT CONTRACTORS AND ARE NOT EMPLOYEES OR AGENTS OF THE HOSPITAL. I further acknowledge that my admission and discharge are arranged by the attending physician. The undersigned further acknowledges that the physician services for doctor care referred to [in] the preceding sentence will be billed separately by the physician or physician group providing the physician's services and that such charges are separate and in addition to the charges and billing for Silver Cross Hospital facilities, supplies and equipment.

R. 64-5 at 58 (capitalization in original).[2] Latoya signed the form below the statement, "*I HAVE READ THIS FORM AND AM SATISFIED I UNDERSTAND ITS CONTENTS AND SIGNIFICANCE.*" *Id.* (italics and capitalization in original); *see also* R. 72-1 ¶ 26. Latoya signed the same form in connection with a separate admission to Silver Cross on or about April 3, 2008. R. 72-1 ¶¶ 22-23; *see also* R. 64-5 at 61. She returned to Silver Cross three weeks later, on April 24, 2008, and signed another consent form. R. 72-1 ¶ 21; *see also* R. 64-5 at 60. This form varied slightly from the format of the prior consent forms, but it contained the same content and verbiage. R. 64-5 at 60. For example, the form stated that the undersigned "understand[s] that all doctors furnishing services to me, including emergency department, radiologists, anesthesiologists, pathologists, and the like, are independent contractors and are NOT EMPLOYEES OR AGENTS of the hospital." *Id.* (capitalization in original).

Latoya was again admitted to Silver Cross on September 2, 2008, when her pregnancy was near term. R. 72-1 ¶ 7. She "had a lot of pain in [her] stomach" and was experiencing "contractions," but she did not know at that time whether she was in labor. R. 83 ¶¶ 3a, 3b; *see also* R. 73-2 at 41. When she was admitted, she signed the same one-page consent form that she had signed on April 24, 2008. R. 72-1 ¶ 16; *see also* R. 64-5 at 59. She did not read the form at that time because she was in pain:

---

[2] The Court will refer to this form as the "general consent form," to distinguish it from the procedure-specific form Latoya executed later.

> [T]hey just said that I needed to sign them. I was in a lot of pain at the time. So I didn't read through them. The lady was like – I am like, I am in a lot of pain. Why you all throwing me all these papers to sign? Ain't you all gonna do something? I am hurting. I am hurting. I am hurting. And the lady was like, well, just sign the papers. These are papers that are saying consent to treat you, and I signed them.

R. 83 ¶ 6. She also executed a one-page form entitled "Informed Consent for Operation/Procedure/Anesthesia" below the following statement: "Having talked with my doctor and having had the opportunity to read this form, my signature below acknowledges my consent to the performances of the procedures described above." R. 65-5 at 62; *see also* R. 72-1 ¶ 18. The next to last numbered paragraph on form states, "I understand all doctors furnishing services to me, including anesthesiologists, radiologists, pathologists and the like are independent contractors and are not employees or agents of the hospital." R. 65-5 at 62; *see also* R. 72-1 ¶ 18. Hospital staff sent Latoya to the Labor and Delivery ward, R. 83 ¶ 4a, where she spent the next 24 hours under the care of hospital nurses. *Id.* at ¶ 7b. At some point, someone at the hospital made the decision to induce labor. *Id.* at ¶ 10. Dr. Husam Marsheh, an independent contractor affiliated with WCCHC, was on call on September 3, 2008 and was the attending physician for Arianna's delivery. R. 72-1 ¶¶ 9, 13, 28; R. 83 ¶¶ 7d, 16-18. Latoya testified that she could not recall seeing Dr. Marsheh at the hospital before he arrived for the delivery, and she had not seen him in connection with her prenatal care. R. 83 ¶¶ 7a, 7b; *see also id.* ¶ 17 ("At the time of Latoya's prenatal care and delivery, [Dr. Marsheh] did not see patients at" WCCHC.). Dr. Marsheh wore green scrubs provided by Silver Cross, although there is no evidence that they bore the name "Silver Cross" or otherwise

identified the hospital. *Id.* at ¶ 12. The nurses who were present for Arianna's delivery complied with Dr. Marsheh's instructions throughout the process. *Id.* at ¶¶ 13-14.

Latoya's labor was difficult due to Arianna's large size (11.7 lbs.), a condition known as macrosomia. R. 39 ¶¶ 20-21, 23. The nerves in Arianna's shoulder were injured during the delivery and she was unable to move her right arm at birth (Erb's palsy). *Id.* at ¶ 21. Blanche alleges that Dr. Marsheh negligently delivered Arianna vaginally rather than by C-section, performed "inappropriate maneuvers" during the delivery, "applied excessive traction on the abdomen," and negligently failed to diagnose macrosomia. *Id.* at ¶ 23. By virtue of his affiliation with WCCHC—a federally-funded clinic—Dr. Marsheh is deemed a federal employee for purposes of this lawsuit. *Id.* at ¶¶ 8-10, 20, 37. On March 17, 2015, the Court granted the United States' motion for summary judgment, holding that Blanche's claims against Dr. Marsheh were untimely under the Federal Tort Claim Act's two-year statute of limitations. R. 92. Silver Cross has not argued that Blanche's claim against it—also predicated on Dr. Marsheh's alleged negligence—is untimely. It argues, instead, that it is not vicariously liable for his actions.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The Court considers the entire evidentiary record and must view all

of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). To defeat summary judgment, a nonmovant must produce more than "a mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Harris N.A. v. Hershey*, 711 F.3d 794, 798 (7th Cir. 2013). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

Blanche effectively concedes that Dr. Marsheh was an independent contractor and not Silver Cross's employee or agent. R. 72 at 3. She argues, however, that a reasonable jury could conclude that Silver Cross is liable for Dr. Marsheh's alleged negligence as the hospital's apparent agent. *Id.*

### I. Apparent Agency

"Apparent authority in an agent is the authority which the principal knowingly permits the agent to assume, or the authority which the principal holds the agent out as possessing. It is the authority which a reasonably prudent person, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Gilbert v. Sycamore Mun. Hosp.*, 622 N.E.2d 788, 795 (Ill. 1993). In *Gilbert*, the Illinois Supreme Court adopted the following test to determine whether a hospital is liable under the apparent-agency doctrine for the actions of its independent-contractor physicians:

> For a hospital to be liable under the doctrine of apparent authority, a plaintiff must show that: (1) the hospital, or its agent, acted in a manner that would lead a reasonable person to conclude that the individual who was alleged to be negligent was an employee or agent of the hospital; (2) where the acts of the agent create the appearance of authority, the plaintiff must also prove that the hospital had knowledge of and acquiesced in them; and (3) the plaintiff acted in reliance upon the conduct of the hospital or its agent, consistent with ordinary care and prudence.

*Id.* To satisfy the first requirement, the plaintiff must show that the hospital "holds itself out" as a medical-care provider "without informing the patient that the care is provided by independent contractors." *Id.* at 796.

Blanche's apparent-agency theory fails at the first step. She points out that Dr. Marsheh controlled the delivery room and wore (apparently generic) surgical scrubs. These cues are consistent with the fact that Dr. Marsheh is a doctor. They would not lead a reasonable person to infer anything about his employment status vis-à-vis Silver Cross. Indeed, Silver Cross's general consent form states that: (1) hospital staff will carry out the doctor's instructions; and (2) the hospital is "not responsible" for treatment that the doctor orders, if properly carried out. R. 64-5 at 59. Similarly, the fact that Dr. Marsheh demanded to know the identity of Latoya's prenatal doctor (in fact, she had several) does not indicate whether he was, or was not, a hospital employee. R. 83 ¶¶ 11b, 11c. Blanche also emphasizes the fact that Dr. Marsheh did not tell her that he was *not* a Silver Cross employee. *Id.* at ¶ 10 ("Dr. Marsheh never told Latoya that he was not an employee of Silver Cross Hospital."). She executed a consent form, however, stating that WCCHC-affiliated physicians delivered babies at Silver Cross:

> I understand that the physicians at the Community Health Center deliver only at Silver Cross Hospital (SCH). SCH is located at 1200 Maple Road, Joliet, Illinois. It is in my best interests to use the hospital at which my physician delivers.

R. 64-5 at 63; *see also* R. 72-1 ¶ 15. She also executed five consent forms that notified her that the treating physicians at Silver Cross are not hospital employees or agents. *Cf. Gilbert*, 622 N.E.2d at 796 (the defendant hospital did *not* notify patients that emergency-room doctors were independent contractors, and its consent form suggested that they were employees). Illinois courts have routinely, but not uniformly, held that similar language precludes vicarious liability predicated on apparent agency. *See Frezados v. Ingalls Mem'l Hosp.*, 991 N.E.2d 817, 820-21 (Ill. App. Ct. 2013) (granting the defendant hospital's summary-judgment motion based on a form similar to Silver Cross's form); *Lamb-Rosenfeldt v. Burke Med. Grp., Ltd.*, 967 N.E.2d 411, 421-22 (Ill. Ct. App. 2012) (same); *Wallace v. Alexian Bros. Med. Ctr.*, 907 N.E.2d 490, 494-95 (Ill. Ct. App. 2009) (same); *Churkey v. Rustia*, 768 N.E.2d 842, 846-47 (Ill. Ct. App. 2002) (same); *James by James v. Ingalls Mem'l Hosp.*, 701 N.E.2d 207, 210-11 (Ill. Ct. App. 1998); *but see Spiegelman v. Victory Mem'l Hosp.,* 911 N.E.2d 1022 (Ill. Ct. App. 2009) (finding a genuine dispute of fact regarding whether the defendant's form was sufficiently clear to disclaim apparent agency); *Schroeder v. N.W. Cmty. Hosp.*, 862 N.E.2d 1011 (Ill. Ct. App. 2006) (same). If Blanche did not understand the distinction, she had opportunities on March 15, 2008, April 3, 2008, April 24, 2008, and September 2, 2008, all prior to her delivery, to ask for clarification.

An executed consent form is an "important factor" when applying *Gilbert's* "holding out" requirement, but it is not always dispositive. *See James*, 701 N.E.2d at 211. For example, a confusing consent form may not dispel the impression that the treating physician is a hospital employee or agent. *See Spiegelman*, 911 N.E.2d at 1031-35; *Schroeder*, 862 N.E.2d at 1020. Citing *Schroeder* and *Spiegelman*, Blanche argues that Silver Cross's forms are "misleading and confusing" because they are densely worded, typewritten in small font, and contain multiple parts addressing issues besides the agency disclaimer. *See* R. 72 at 5-11; R. 64-5 at 58-62. The *Schroeder* court held that the following language in the defendant hospital's consent form was confusing:

> *Item 2 disclosure Statement:* Your care will be managed by your personal physician or other physicians *who are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center but have privileges to care for patients at this facility. Your physician's care is supported by a variety of individuals employed by Northwest Community Hospital or Northwest Community Day Surgery Center, including nurses, technicians and ancillary staff. Your physician may also decide to call in consultants who practice in other specialties and may be involved in your care. Like your physician, those consultants have privileges to care for patients at this facility, *but are not employed by Northwest Community Hospital* or Northwest Community Day Surgery Center.

862 N.E.2d at 1014 (emphasis in original). The disclaimer did not use the term "independent contractor," and the court concluded that a reasonable person could read the disclosure to mean that the plaintiff's "personal physician" was employed by Northwest Community Hospital, but that "other physicians" and "consultants" were not. *Id.* at 1016. The plaintiff in *Spiegelman* sued Victory Memorial Hospital, among others, for negligently failing to diagnose bacterial meningitis. 911 N.E.2d at

1026. The plaintiff executed a one-page, 9-paragraph consent form when she was admitted to the hospital's emergency room. *Id.* at 1027. In the middle of the consent form, the patient certified that:

> [Paragraph 3]
>
> I am aware that during my visit to the Emergency Department of Victory Memorial, hospital employees will attend to my medical needs as may be necessary. I understand that these individuals may carry out a part or all of my treatment as consistent with their respective professional education, experience, and license.
>
> [Paragraph 4]
>
> I understand that the Emergency Department physician and my attending physician are independent contractors and not agents or employees of VICTORY MEMORIAL HOSPITAL. I further understand that my attending physician may request treatment or diagnostic services (including radiology, anesthesiology, pathology) by other physicians. I am also aware that any other physicians who may be called to attend my care are independent contractors and not employees or agents of VICTORY MEMORIAL HOSPITAL.

*Id.* (capitalization in original). "Immediately beneath the numbered paragraphs was an unnumbered separate section titled: '<u>RELEASE FOR RESPONSIBILITY FOR VALUABLES.</u>' The signature line was beneath this section, and plaintiff's signature there was witnessed." *Id.* (emphasis and capitalization in original). After a jury returned a multi-million dollar verdict against the hospital and the other defendants, the hospital moved for judgment notwithstanding the verdict. *Id.* at 1030. The circuit court denied the motion, and the appellate court affirmed, reasoning that the consent at issue was similar to the consent in *Schroeder*:

> [H]ere the consent, although not identical to the *Schroeder* consent, is clearly similar. Both in *Schroeder* and in the instant case, the consent utilized a multi-part format and contained various provisions

> unrelated to the independent contractor disclaimer. [*Schroeder*, 862 N.E.2d at 1014.] Indeed, here the form itself is titled, in capitalized, underlined language, "CONSENT FOR EMERGENCY TREATMENT." The signature line is beneath a separate unnumbered paragraph concerning the release of property. Moreover, immediately preceding the paragraph containing the disclosure is a paragraph stating: "I am aware that during my visit to the Emergency Department of VICTORY MEMORIAL HOSPITAL, *hospital employees* will attend to my medical needs as may be necessary." (Emphasis added.) Thus, the jury could rightfully infer that plaintiff was confused as to which doctors were employees of the hospital and which were independent contractors. Further, in the emergency room, plaintiff had complained of dizziness and problems with her vision, and there was evidence that plaintiff's condition rapidly worsened. For these reasons, a jury could reasonably conclude that the consent was confusing and ambiguous and therefore did not adequately inform plaintiff of her doctor's independent contractor status.

*Id.* at 1033-34.

*Schroeder* and *Spiegelman* are distinguishable. Unlike the form in *Schroeder*, Silver Cross's general consent form unambiguously states that: (1) physicians using the hospital's facilities are independent contractors, not hospital employees; (2) the physician will bill the patient "separately" for his or her services; and (3) those charges are "in addition to the charges and billing for Silver Cross facilities, supplies, and equipment." R. 64-5 at 60. *Spiegelman* is more analogous to this case inasmuch as the defendant's form disclosed that the physicians at the hospital were "independent contractors." 911 N.E.2d at 1027. But unlike that form, Silver Cross's general consent form clearly and consistently distinguishes the hospital's services from the treating physician's services. *See Frezados*, 991 N.E.2d at 822 ("There are no exceptions to [the language stating that the physicians are independent contractors], and the disclaimer is not implicitly contradicted elsewhere in the form,

as in *Schroeder* and *Spiegelman*."). Blanche signed each general consent form beneath the language, "I have read this form and am satisfied that I understand its content and significance." R.64-5 at 58-62. The fact that she did not actually read the form is irrelevant. *See Steele v. Provena Hosp.*, 996 N.E.2d 711, 732 (Ill. Ct. App. 2013) ("[T]he terms of Provena's consent form and [the patient's] assent to them are not negated by her failure to read the document.") (citing *Melena v. Anheuser– Busch, Inc.*, 847 N.E.2d 99, 108 (Ill. 2006) and *Black v. Wabash, St. L. & P. Ry. Co.*, 111 Ill. 351, 1884 WL 9967, *3 (Ill. 1884)); *Frezados*, 991 N.E.2d at 822-23 (similar). The font is small, but legible, and the agency disclaimer is capitalized. The distance between the signature block and the disclaimer is only arguably relevant when the form's format suggests that the patient is only agreeing to the immediately preceding language, as in *Spiegelman*. 911 N.E.2d at 1033. Even if it was a relevant factor in this case, the disclaimer appears near the signature block in the procedure consent form that Blanche executed on September 2, 2008. R. 65-5 at 62 ("I understand all doctors furnishing services to me, including anesthesiologists, radiologists, pathologists and the like are independent contractors and are not employees or agents of the hospital."). The forms do contain multiple parts, but that fact alone does not create a genuine dispute of fact for trial. *See Lamb-Rosenfeldt*, 967 N.E.2d at 421 (holding that a form containing "multiple parts" was nevertheless clear and granting summary judgment to the defendant hospital). Viewed through the lens of this medical malpractice lawsuit, the independent contractor/employee distinction takes on special significance. But the other matters addressed in the

form (e.g., the patient's commitment to pay the hospital for the services the patient is consenting to) are also important. Requiring hospitals to generate more forms might actually create more (not less) confusion. Finally, the Court sympathizes with Latoya's statement that the pain she was experiencing on September 2, 2008 was foremost in her mind. But as the *Frezados* court observed,

> [n]early everyone who seeks emergency treatment is in some physical or emotional distress, and were we to hold that such distress could operate to nullify provisions in an otherwise duly signed treatment consent form, hospitals would always be required to proceed to trial on claims of vicarious liability. Thus, while we are not unsympathetic to the pain experienced by plaintiff at the time he sought medical treatment, we cannot hold that this pain could excuse him from reading the form prior to signing, or from having someone else sign the form if he was unable to consent due to his condition.

991 N.E.2d at 823. This reasoning is especially persuasive in this case, where the plaintiff executed essentially the same form three times before she was admitted to the hospital on September 2, 2008.

In sum, the Court concludes that there is no genuine dispute of material fact regarding the *Gilbert* test's first element. A reasonable person in Blanche's position would not have concluded that Dr. Marsheh was Silver Cross's employee or agent.

## II. *Respondeat Superior*

Blanche effectively concedes that apparent agency is the only potential basis for holding Silver Cross vicariously liable for Dr. Marsheh's actions. The Court concludes, therefore, that Silver Cross is entitled to summary judgment.

## CONCLUSION

The Court grants Silver Cross's motion for summary judgment, R. 63.

ENTERED:

*Thomas M Durkin*
Honorable Thomas M. Durkin
United States District Judge

Dated: March 24, 2015